**SO ORDERED.**

**SIGNED this 8 day of July, 2020.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                                                CASE NO. 19-02641-5-DMW

ERICA RENEE FULLER
                                                                              CHAPTER 13
                        DEBTOR

### ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN

This matter comes on to be heard upon the Chapter 13 Plan ("Plan") filed by Erica Renee Fuller ("Debtor") on February 7, 2020 and the Objection to Confirmation ("Objection") filed by John F. Logan, Esq. ("Trustee"), Chapter 13 trustee, on February 26, 2020.  The court conducted a hearing in Raleigh, North Carolina on March 4, 2020.  Travis Sasser, Esq. appeared for the Debtor, and Michael B. Burnett, Esq. appeared for the Trustee.  At the conclusion of the hearing, the court permitted the parties to submit memoranda supporting their respective positions.  The Debtor filed a Memorandum in Support of Confirmation ("Debtor's Memorandum") on April 3, 2020, and the Trustee filed a Memorandum in Support of Trustee's Objection to Confirmation of Chapter 13 Plan ("Trustee's Memorandum") on May 2, 2020.  Based upon the pleadings, the arguments of counsel and the case record, the court makes the following findings of fact and conclusions of law:

Background

1.  The Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on June 7, 2019 ("Petition Date"). The court appointed the Trustee to fulfill the duties as provided in 11 U.S.C. § 1302.

2.  The Debtor owns real property ("Property") located at 4015 Massey Preserve Trail in Raleigh, North Carolina. The Property secures a promissory note in the original principal amount of $190,230.00 that has been transferred to U.S. Bank National Association ("U.S. Bank"). U.S. Bank filed a Proof of Claim on July 30, 2019, asserting a claim in the amount of $270,842.34, including arrears of $90,875.35 as of the Petition Date. According to the Notice of Mortgage Payment Change filed by U.S. Bank on February 22, 2020, the current monthly payment due to U.S. Bank, including principal, interest and escrow funds, is $1,524.80. Previous Chapter 13 Plans filed by the Debtor indicated that she was attempting to negotiate a loan modification with U.S. Bank.[1] The Debtor made three post-petition payments directly to U.S. Bank but subsequently defaulted on her ongoing monthly obligations to U.S. Bank.

3.  The Debtor owns a 2005 GMC Envoy and a 2015 Honda Accord ("Honda"). The Honda secures a debt in favor of CarMax Business Services, LLC ("CarMax"). According to the Proof of Claim filed by CarMax, the contractual monthly payment due to CarMax is $363.67.

4.  On Official Form 122C-1, the Debtor calculated her current monthly income to be $3,652.90, exclusive of payroll deductions. Based on that income figure, the Debtor is a below-median income debtor. On Schedule J, filed with the court on July 10, 2019, the Debtor listed her home ownership expense as $1,497.00 per month and listed a vehicle expense in the amount of

---

[1] After the March 4, 2020 hearing and after the parties filed their memoranda, the court granted to U.S. Bank relief from the automatic stay of 11 U.S.C. § 362 on May 7, 2020, permitting U.S. Bank to take action to foreclose its security interest in the Property.

$363.00.  After deducting those amounts and all other monthly expenses from her income as calculated on Schedule I, the Debtor has net income in the amount of $98.42 each month.

5.  The Plan does not project any disposable income, as referenced in 11 U.S.C. § 1325(b), that would be paid to the Debtor's unsecured creditors.[2]  The Plan proposes to avoid two judicial liens against the Property pursuant to 11 U.S.C. § 522 and to pay attorney's fees to the Debtor's counsel.  Part 3 of the Plan, entitled "Treatment of Secured Claims," does not include any provision for the payment of U.S. Bank or CarMax.  Part 8.1 of the Plan ("Nonstandard Provision") states that "[i]f a secured claim is not provided for in the plan then the obligation is not being paid pursuant to the plan and no disbursements shall be made by the trustee on such a claim."

6.  The Trustee objects to the Nonstandard Provision to the extent the Debtor is "proposing to pay a pre-petition creditor its allowed claim during the pendency of this case, without disclosing the nature, timing, or amount of that payment." Objection, DE 48, at 1 (Feb. 26, 2020).  The Trustee asserts that a Chapter 13 plan is the designated medium for providing notice to all creditors of how pre-petition debts will be paid, and if the Nonstandard Provision is an attempt to have the court sanction the payment of certain secured debts through undisclosed terms, then it is not being proposed in good faith.

7.  The Trustee also asserts in the alternative that "the absence of treatment for the U.S. Bank, N.A. claim in the Plan . . . suggests the Debtor will not be servicing that debt during the pendency of this case." Objection, at 2.  The Trustee argues that the Debtor should not be permitted to include the payments to U.S. Bank in her calculation of disposable income if she is not proposing to make payments to U.S. Bank during the pendency of the Plan.  The Trustee asserts the Debtor

---

[2] According to the Trustee, general unsecured creditors would be projected to receive a total of approximately $46.00 under the Plan.

should be required to make a "*Lanning* adjustment"[3] to the proposed Plan payment to account for the reduction in the Debtor's monthly expenses and related increase in monthly disposable income. An increased Plan payment would provide a dividend to unsecured creditors.

8.  At the hearing, the court also questioned whether the absence of treatment of CarMax's claim in the Plan raises the same concerns as those raised by the Trustee regarding U.S. Bank's claim.

Jurisdiction

9.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

Discussion

*No Treatment of the Claims of U.S. Bank and CarMax*

10.  The Trustee asserts that the United States Bankruptcy Code

> does not appear to require chapter 13 debtors to provide treatment in a plan for every secured claim, but neither does it indicate the failure to provide (or decision to not provide) for a claim is de facto 'direct pay' treatment authorizing debtor and creditor alike to formulate their own repayment scheme outside the court's supervision.

Trustee's Memorandum, DE 59, at 15 (May 2, 2020) (footnote omitted). The Trustee notes that the other standing Chapter 13 trustee in this district, Joseph A. Bledsoe, III, Esq., recently argued in another case that "a chapter 13 debtor must specifically provide for the treatment of each allowed

---

[3] A "*Lanning* adjustment," named for the United States Supreme Court decision in *Hamilton v. Lanning*, 560 U.S. 505 (2010), effectuates a change to a debtor's projected disposable income amount by accounting for known or virtually certain changes in a debtor's financial circumstances.

4

secured claim in a proposed chapter 13 Plan . . . ." *In re White*, Case No. 19-05385-5-SWH, Memorandum of Law in Support of Objection to Confirmation, DE 27, at 13 (Mar. 6, 2020).[4] In this case, the Trustee's challenge is not primarily directed at the failure to address the disposition and treatment of the secured claims of U.S. Bank and CarMax; however, this omission tends to render the Plan incomplete.

11. The court need not address the issue whether the Plan must provide for the treatment of the secured claims of U.S. Bank and CarMax. Even if treatment of a secured claim is permissibly excluded from a Chapter 13 plan, that exclusion has consequences which the Debtor appears to be attempting to avoid. The Nonstandard Provision asserts the Debtor's obligations to U.S. Bank and CarMax are not being paid "pursuant to the plan," leaving unanswered the question whether the Debtor intends to remit payments to U.S. Bank or CarMax in some other fashion. If a plan does not propose treatment of a secured claim, either through a trustee or direct payments from the debtor as outlined in the plan, then a debtor should not be permitted to reserve the right to pay that creditor outside of the bankruptcy court's supervision. If debtors were permitted to exclude a secured claim from a plan but continue to pay the creditor post-confirmation on terms unknown to the court, then the court's obligation to ascertain the feasibility of a plan under 11 U.S.C. § 1325(a)(6) would be rendered meaningless. This aspect is especially true in the Debtor's case where the Debtor fails to account for significant pre-petition arrears on her monthly budget.

12. As asserted by the Trustee, "if there is no mention of a secured claim in the Plan, then the Trustee and all creditors should be permitted to conclude neither the Debtor nor the Trustee will be disbursing funds on that claim during the case." Trustee's Memorandum, at 15. Pursuant to 11 U.S.C. § 1327, "[t]he provisions of a confirmed plan bind the debtor and each

---

[4] Judge Humrickhouse has taken Mr. Bledsoe's argument under advisement and has not issued a ruling in that case.

creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). This provision of the Bankruptcy Code establishes clarity between debtor and creditor about their new relationship under a confirmed plan. The effect is more dramatic when a secured claim is modified or rendered unsecured. It is less dramatic when an unsecured creditor is limited to its *pro rata* distribution from the plan payments. The Debtor has through the Nonstandard Provision left unsaid how U.S. Bank and CarMax will be treated. The Nonstandard Provision creates ambiguity about potential post-confirmation payments by the Debtor to U.S. Bank and CarMax. These creditors are left to only speculate what the Debtor wants or does not want to do and possibly to their detriment, because the Debtor could enjoy their collateral for weeks or months until these creditors can determine if the Debtor intends to pay them. The Nonstandard Provision impedes the court from determining that the Debtor will be able to make all payments under the Plan and comply with the Plan pursuant to § 1325(a)(6). The confirmation challenges do not end with § 1325(a)(6).

*The Debtor's Calculation of Disposable Income*

13. Pursuant to 11 U.S.C. § 1325(b)(1), if a plan does not provide for payment in full to unsecured creditors and

> the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B).

14. For purposes of § 1325(b)(1)(B),

6

>  'disposable income' means current monthly income received by the debtor (other than . . . child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child)[5] less amounts reasonably necessary to be expended—
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
> (ii) for charitable contributions . . . .

11 U.S.C. § 1325(b)(2).

15.     As a below-median income debtor, the Debtor's disposable income could normally be ascertained by examining the Debtor's current monthly income on Form 122C-1 and the information listed on Schedules I and J, accounting for any exclusions from income pursuant to § 1325(b)(2).[6] The problem in this case, though, is that the Debtor's expenses listed on Schedule J are not reliable. As noted above, the Debtor listed her home ownership expense as $1,497.00 per month and listed a vehicle expense in the amount of $363.00 on Schedule J filed with the court on July 10, 2019. When the court conducted the hearing on March 4, 2020, the Debtor apparently had defaulted on ongoing payments to U.S. Bank but was still attempting to modify her obligation to U.S. Bank, and a modified loan could yield a different monthly payment. Since then, U.S. Bank obtained relief from the automatic stay to foreclose its interest in the Property, and presumably the Debtor has no housing expense pending the completion of the foreclosure proceedings. Of course, the Debtor may have a new housing expense after she vacates the Property, but that figure cannot

---

[5] As part of the Coronavirus Aid, Relief, and Economic Security Act, commonly known as the CARES Act, enacted on March 27, 2020, Congress amended § 1325(b)(2) to also exclude from the term "disposable income" "payments made under Federal law relating to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the coronavirus disease 2019 (COVID–19)." Pub. L. No. 116-136, § 1113, 134 Stat. 281 (2020). That new provision is not relevant to the matter before the court.

[6] By comparison, above-median income debtors must apply a formulaic approach to determine their disposable monthly income pursuant to 11 U.S.C. § 1325(b)(3).

presently be ascertained. The Debtor's intentions regarding the Honda and the CarMax claim remain a mystery.

16. The *Lanning* adjustment proposed by the Trustee is the removal of any housing expense from the Debtor's calculation of disposable income. The Trustee analogizes the circumstances of this case to one in which a debtor proposes to surrender property for which an expense was included on the debtor's calculations of disposable income. *See Morris v. Quigley (In re Quigley)*, 673 F.3d 269, 274 (4th Cir. 2012) (citing the debtor's intention to surrender two all-terrain vehicles and finding "under these circumstances, failing to account for such changes and thereby denying the unsecured creditors payments that the Debtor clearly could make would be just the sort of 'senseless result[ ]' that the *Lanning* Court rejected") (quoting *Hamilton v. Lanning*, 560 U.S. 505, 520 (2010)).

17. The Trustee also cites *In re Byers*, 501 B.R. 82 (Bankr. E.D.N.C. 2013). In that case, the Chapter 7 debtor, also represented by Mr. Sasser, defaulted on his mortgage payments shortly before filing his petition, although he performed some maintenance to the property while attempting to sell the property. 501 B.R. at 84. The debtor was unable to continue making payments to his mortgage creditor, but he deducted the mortgage payment on his Chapter 7 means test and noted on Schedule J that his expenses would change if he sold the property. *Id.* at 83-84. The United States Bankruptcy Administrator sought dismissal of the case for abuse pursuant to 11 U.S.C. §§ 707(b)(1) and 707(b)(3), asserting the debtor should not include the deduction of the mortgage payment on the means test. *Id.* at 84. The court noted that "[t]he debtor's filings do attempt to provide full disclosure, but they are contradictory." *Id.* at 85. Citing *Lanning* and

*Quigley*, the court found that the debtor's deduction of his mortgage payment on the means test was improper.[7] *Id.* at 86-88.

18.     The Debtor asserts that the Trustee has not met his burden to show that the Plan payment should be increased by the monthly contractual amount due to U.S. Bank. As noted by the United States Supreme Court in *Lanning*, "a court . . . should begin by calculating disposable income, and in most cases, nothing more is required. It is only in unusual cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses." 560 U.S. at 519.

19.     The Debtor argues that "[c]onfirmation of a plan does not reveal all things or mandate the outcome of all future contingencies that may occur relative to debtors or their cases," and she suggests that disclosure requirements will keep the Trustee sufficiently informed of any post-confirmation changes in her expenses. Debtor's Memorandum, DE 58, at 2 (Apr. 3, 2020). The Debtor also cites language from a footnote in the Fourth Circuit Court of Appeals case of *Cen-Pen Corp. v. Hanson*, 58 F.3d 89 (4th Cir. 1995). In that case, the debtors' plan did not provide for a creditor's secured claim, and the debtors did not take proper steps to extinguish the creditor's liens through the plan. The court noted that "[b]ecause a creditor's liens pass through the bankruptcy process unimpaired in this situation, the debtor remains obligated on the underlying debt. A debtor's payments may, however, be taken into account in determining a debtor's disposable income, which in turn determines the monthly amount to be paid under the plan." 58 F.3d at 94 n.4. In this case, the record indicates that the Debtor had not been making regular

---

[7] The *Byers* court recalculated the debtor's means test using the applicable Internal Revenue Service Housing and Utilities Standard mortgage deduction and found that the debtor's case was an abuse of the provisions of Chapter 7. 501 B.R. at 88.

payments to U.S. Bank in the months leading up to the hearing, so no payments exist to "be taken into account" when determining the Debtor's disposable income.

20. Even if the suggested *Lanning* adjustment were not appropriate, *e.g.* because the Debtor anticipates having a replacement housing expense sometime in the future, the Debtor cannot presently carry her burden to show that she is committing all her projected disposable income to the Plan.

*The Debtor's Lack of Good Faith*

21. The Trustee argues that the Debtor has not proposed the Plan in good faith. For a plan to be confirmed, the plan must be proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1325(a)(3). The Trustee cites the following supporting facts:

a. The Debtor has for several years failed to make most of the pre-petition mortgage payments;

b. The Debtor has failed to make most of the post-petition mortgage payments;

c. The Debtor makes no indication that she will pay U.S. Bank either for the ongoing payments or the arrearage;

d. The Debtor, even without the assurance of paying U.S. Bank, has claimed a deduction for that amount from her current monthly income; and

e. The Debtor had not provided any proof of participation in a loan modification program.[8]

22. A more forthcoming approach would be to provide the method of repayment of the U.S. Bank claim and include contingencies if certain events occur. If the proposal became infeasible or too overwhelming, a better approach would be to estimate a possible housing expense

---

[8] While not raised by the Trustee, the court questioned the Debtor's failure to address the secured claim of CarMax.

in the event of a subsequent surrender or foreclosure. Providing an alternative course of action, such as renting a home, even if she had to speculate, would be preferable and more transparent than remaining silent.

23. The Plan as proposed does not meet the confirmation standards; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. Confirmation of the Chapter 13 Plan filed on February 7, 2020 be, and hereby is, denied; and

2. The Debtor shall have thirty days from the date of this Order to file an amended Chapter 13 Plan.

END OF DOCUMENT